MILLER et al. v. LAWYERS TITLE INS. CORP.

Civ. A. No. 1433.

United States District Court
E. D. Virginia, Richmond Division.

Jan. 12, 1953.

Meade T. Spicer, Jr., Richmond, Va., for plaintiffs.

R. Carter Scott, Jr., Richmond, Va., for defendant.

———◆———

STERLING HUTCHESON, Chief Judge.

This is an action brought by Virginia B. Miller and Alten S. Miller, residents of New Jersey, against Lawyers Title Insurance Corporation, a Virginia corporation.

The following memorandum is intended to serve as findings of fact and conclusions of law under the Federal Rules of Civil Procedure, 28 U.S.C.A.

On December 10, 1940, Alten S. Miller entered into a contract with A. H. Ochsner, of Surry County, Virginia, to purchase certain real estate in that county containing 1659 acres. The written contract contained as a provision a proviso that title to the real estate was insurable and free from valid objections.

In the course of closing the transaction, on January 9, 1941, one of the practicing attorneys of Surry, filed with the defendant what is designated as "Attorney's First Certificate and Report of Title", on form prepared by the defendant, which contained as a description of the property reference to copy of a deed dated December 30, 1940, thereto attached, which deed will be hereafter more fully discussed.

On January 15, 1941, the defendant issued to Mr. Miller what is known as an "Interim Title Insurance Binder", which contains the same language respecting the plat of survey set forth in the deed and in the owner's policy hereafter discussed. During this period in reliance upon the agreement of the defendant to insure the title in accordance with the terms of the Binder the purchase price of the property was paid by the plaintiffs. When the deed was executed Mrs. Miller was named as grantee along with her husband. On January 24, 1941, there was filed with the defendant an "Application for Owner's Title Insurance Policy", executed by "Alten S. Miller, by Henry Burwell Epes". Mr. Epes was the real estate agent who negotiated the sale. In due course the policy of insurance was issued and delivered to the plaintiffs.

The property conveyed consisted of more than 80 lots referred to in the deed in part as:

"First, all those certain lots situated in Surry County, Virginia, and designated on the plat of Survey of Claremont Colony, which said plat is duly recorded in the circuit court of Surry County, Virginia, as follows:"

The language just quoted is used in the insurance contract and as will be seen the rights of the parties depend upon its interpretation.

Following the consummation of the transaction the purchasers obtained a copy of what purports to be described in the deed and policy contract as "Plat of Survey of Claremont Colony", recorded in the Clerk's Office of Surry County.

Upon inspection it was found that the instrument referred to is a drawing of a large area in Surry County, subdivided into lots of varying sizes, many purporting to contain 20 acres each, but others of areas of varying sizes. While a cursory glance at the drawing would tend to indicate that it is a map or plat of a survey, including the Town of Claremont, and reflecting a railroad, streets and roads, the villages of Spring Hope and Cabin Point, with two other town sites indicated as Raymond and Bartlett, a more careful examination shows that the instrument is merely a drawing rather than a plat of survey as I understand that term. There are no metes and bounds, courses and distances. There is no scale of measurement. There is no note of survey anywhere disclosed. The drawing bears no date nor does the name of a surveyor or engineer appear although on a copy there is the name of Charles Ruffin, with no reference as to his connection. Certain streams are reflected, including the James River, but the map, if such it may be called, is totally inadequate for the purpose of establishing either a starting point or a boundary line. While the original was not produced, it was testified to and conceded by counsel that the reproductions introduced fairly represent the one appearing on the records in Surry County.

Historically, it appears that some time following the War Between the States a man named Mancha purchased a large area of land in Surry County comprising many thousands of acres, and had this drawing made with the view of selling off small tracts to colonists. Over the years smaller tracts were sold from time to time and in the course of time numerous copies of the map have been made by various persons in connection with transfers of the property. Eventually Mr. Ochsner became the holder of the tract here involved.

Finding the map inadequate for the purpose of locating the real estate involved, the purchaser called upon the defendant insurance company to furnish a plat of survey or other sufficient information from which the lines could be located. The company declined to furnish a plat of survey but did attempt unsuccessfully to obtain other sufficient information. Negotiations continued over a period of many months and finally on November 17, 1942, counsel for the plaintiffs notified the insurance company by letter that the plaintiffs would take other appropriate steps with the expectation of having the company reimburse them for all reasonable costs and expenses. By letter dated November 19, 1942, the company denied liability.

The plaintiffs thereafter engaged the services of a surveyor in Petersburg to establish the lines. After numerous efforts the surveyor abandoned the undertaking and the firm of W. W. LaPrade and Brothers, of Richmond, was engaged to make a survey, which was completed and a map made by that firm dated July 26, 1949, revised October 31, 1950, and filed as Exhibit 5, showing a total of 1572.4 acres, which included Parcel numbered 5, purporting to contain 65 acres which was not surveyed but which was described in the deed to the plaintiffs by metes and bounds. Thereafter under date of January 11, 1951, the defendant was notified by counsel for the plaintiffs that the expenses incurred in connection with locating the property amounted to $4,652.23, and called for reimbursement therefor under the terms of the insurance contract. Under date of January 24, 1951, the company replied to that demand, referring to the fact that since the matter first arose in 1941 it had denied liability as set forth in its letter of November 19, 1942. For some months thereafter informal conferences were had but no agreement was reached and this suit was filed on November 23, 1951, in which plaintiffs seek to recover the amounts expended by them in connection with locating the property.

The defendant insurance company defends upon two grounds. It contends, first, that the policy does not cover the claim by reason of certain exceptions set out in the contract, and for the second ground liability is denied because of the lapse of time pro-

vided by the contract within which action can be maintained. These defenses will be dealt with separately.

(1) In substance, the policy contract insures the plaintiffs against loss or damage not exceeding $11,689.07, which they:

"shall sustain by reason of any defect or defects in the title of the Insured to the estate or interest of the insured in the real estate described in Schedule A, hereto annexed, or by reason of liens or encumbrances against the same as of the date of the final examination of the title thereto, to-wit: February 4, 1941, which date shall be deemed the effective date of this policy, excepting the defects, estates, interests, objections, liens or encumbrances mentioned in Schedule B, hereto annexed, or excepted by the conditions or stipulations of this policy hereto annexed and incorporated herein as a part of this contract."

It might be remarked parenthetically that the date of February 4, 1941, is of no significance so far as the facts here are concerned since the policy contract dated March 5, 1941, was issued pursuant to the interim title insurance binder dated January 15, 1941.

The description of the real estate described in Schedule A is copied from the deed to the plaintiffs and for the purpose of this case the pertinent description there found is as follows:

"First, all those certain lots situated in Surry County, Virginia, and designated on the plat of Survey of Claremont Colony, which said plat is duly recorded in the circuit court of Surry County, Virginia, as follows:"

This description is amplified by a list of lots designated by number and area. Further in the deed appears references to previous conveyances of the property but no descriptive matter of value with the exception of Parcel numbered 5 previously mentioned purporting to contain 65 acres described by metes and bounds, which parcel is not in controversy.

Turning to Schedule B, it will be seen that the policy provides that it:

"does not insure or indemnify against the estates, interests, defects, objections to title, liens, charges and encumbrances affecting said real estate, or the estate or interest therein insured, as are scheduled below: * * * Item 2. Rights of parties in possession, deficiency in quantity of land, boundary line disputes, unrecorded easements, or any matters not of record, which would be disclosed by an accurate survey and inspection of the premises."

As a part of Schedule B there appears the following:

"Conditions and Stipulations of This Policy * * *. 6. Nothing contained in this policy shall be construed as insuring * * * (8) the acreage or area contained in a given tract, nor accuracy or location of boundary lines, nor the location or contiguity of the interior lines of any parcel making up such property, unless an accurate survey of the property described is furnished."

In this connection the defendant points to the fact that in the Application for Owners Title Insurance Policy question numbered 7, reading: "Will Insurance against questions of survey be required?", is answered "No".

From the foregoing it will be seen that the first defense presents the single question as to whether the company is liable for the inaccuracy of the description of the map or drawing as a "Plat of survey of Claremont Colony" if the description is, in fact, inaccurate or if the inaccuracy or insufficiency of the map is within the exceptions of the policy.

Bouvier's Law Dictionary (1940 Ed.), page 1159, defines "survey" as "the act by which the quantity of a parcel of land is ascertained; the paper containing a statement of the courses, distances, and quantity of land is also called a survey." On page 942 "plat" is defined as "a map of a piece of land, on which are marked the courses and distances of the different lines, and the quantity of land it contains."

It is my opinion that the foregoing definitions are not only legally accurate but they are definitions in common use and acceptation. See also 60 C.J., page 1185; 26 Words and Phrases page 491; and Convers v. Grand Rapids & I. R. Co., 18 Mich. 459, 466; Black's Law Dictionary (3rd Ed. 1944).

■■ It is my conclusion that the defect or objection to title is not within the exception of Schedule B. Item 2 excepts "any matters not of record, which would be disclosed by an accurate survey and inspection of the premises." The map in controversy is a matter of record and upon its face shows that it is not a "plat of survey". Nor does the quoted portion of the conditions and stipulations of the contract bring the objection or defect within the exception. The acreage or area is not involved and while the "accuracy or location of boundary lines" may be said to be involved in a general way, the difficulty here is that while the property is described as being shown on a plat of survey, actually no boundary lines are reflected on a plat of survey as represented by the contract. There is shown merely a drawing of imaginary lines on a record in the clerk's office of the county in which the land is located. If there should be any doubt or question as to the meaning of the language contained in the policy, it is too well established to require citation of authorities that the doubt or question should be resolved against the company which prepared the contract although, as stated, it is my opinion that the language is clearly not such as to bring the objection or defect within the exception. The contract represents that there was on record a "plat of Survey" and actually there is no "plat of survey" on record.

Marandino v. Lawyers' Title Insurance Company, 156 Va. 696, 159 S.E. 181, 182, would appear to be controlling upon the questions raised by the first defense. In that case the policy described the insured property as a lot at the northeast corner of 22nd and Broad Streets in the City of Richmond, as established by an Ordinance of the City Council approved October 14, 1911, and fronting on 22nd Street 38 feet 5 inches, more or less. After purchase by the plaintiff it was discovered that the Ordinance named in the description fixed the line of Broad Street so as to take off from the 22nd Street front 5 feet 3 inches, leaving on that street only 33 feet 2 inches. In a suit against the city on behalf of the policy holder it was held that the city had title to the 5 feet 3 inches involved. The reasoning of the Court in that case in holding the company liable for the defect so clearly covers the instant case that I quote the following:

"There being no substantial conflict in the testimony as to the facts, the determination of the case depends upon the construction of the policy.

"In approaching this question, it appears to be everywhere held that such policies are subject to the rules generally applicable to contracts of insurance, among which are, that being drawn by the company doubtful questions should generally be decided in favor of the insured, and that exceptions and reservations are strictly construed. The language is construed in accordance with the common understanding of the words used. Ann.Cas. 1914D, 638; 38 Cyc. 346.

"So approaching this contract, there seems to be no obscurity in its terms. It is said for the company that, had the assured gone to the ordinance, she would have discovered that the lot did not front 38 feet 5 inches upon Twenty-Second street. By the same token, had the company's title examiner gone to the ordinance, he should have discovered the same thing. This then is a defect in the description which the record disclosed, and it is against defects shown by the record which the company undertook to insure the plaintiff.

"It is argued for the company, and seems to have been held by the trial court in this case, that, inasmuch as this ordinance disclosed the defect, and the company disclosed the ordinance, therefore the plaintiff has received the property she bought. We think this is too strict a construction. She was justified in concluding that, notwith-

standing the fact that the ordinance established the line of Broad street, it was nevertheless true that the lot which she was buying still fronted 38 feet 5 inches on Twenty-Second street, for so the property is described in her policy. She had the right to rely upon that description. The defect is one which the company should have discovered, and, if discovered, good faith and honesty required that the defect should have been plainly disclosed to the plaintiff.

"There have not been many cases which have involved such a question, but all to which our attention has been called tend to sustain the views which we have stated.

\* \* \* \* \* \*

"All that is said in these cases applies with equal force to the facts in this case. The plaintiff had the right to rely upon the description of the property, and specifically as to its frontage on Twenty-Second street, notwithstanding the ordinance. The risk of a proper description was assumed by the company, and it should bear the responsibility for the mistake."

See also Title Insurance Co. of Richmond v. Industrial Bank, 156 Va. 322, 157 S.E. 710.

In Kentucky Title Company v. Hail, 219 Ky. 256, 292 S.W. 817, 823, the Court uses the following language which aptly sums up the situation usually prevailing in such case as this:

"To a layman, the examination of a title is mysterious and the various pitfalls that may beset his title are dreaded, but unknown. To avoid a possible claim against him, to obviate the need and expense of professional advice, the uncertainty that sometimes results, and the uneasiness that is experienced even after it has been obtained, is the very purpose for which the owner seeks title insurance."

From what has been said it follows that the first defense is without merit. The plaintiffs were entitled to rely upon the representation of the company that there was a "plat of survey" of the property duly recorded in the county in which it was located. The facts of this case are really stronger than if the map had been described in such manner as to indicate that it disclosed only the exterior boundaries since it requires no argument to demonstrate that the owner of property which has been subdivided into small parcels can expect to experience less difficulty in locating and establishing the exterior boundary lines because there are numerous interior lines reflected on a plat of survey of a sub-division, from which a starting point may be obtained.

2. In support of its contention that the action is barred by the lapse of time, the defendant again turns to the "Conditions and Stipulations of This Policy" contained in Schedule B, which provides, in part, as follows:

"4. A statement in writing of any loss or damage for which it is claimed the company is liable shall be furnished to the company within sixty days after such loss or damage, and no right of action shall accrue under this policy until thirty days after such statement shall have been furnished and no recovery shall be had under this policy unless action shall be commenced thereon within one year after the expiration of said last mentioned period of thirty days; and a failure to furnish such statement of loss or damage, and to commence such action within the times hereinbefore specified, shall be a conclusive bar against the maintenance of any action under this policy."

The company contends that the letter of November 17, 1942, from counsel for the plaintiff and its reply of November 19, 1942, denying liability, fixed the time at which the right of action commenced. I do not so interpret the contract. Again, it is proper, although I think unnecessary, to invoke the principle that any ambiguity of the terms of the contract should be resolved against the defendant. The provision is what might be termed a contractual statute of limitations and should be construed most favorably for the plaintiffs. It will be observed that the insured were required to

furnish to the company a statement in writing of claim for loss or damage within sixty days after such loss or damage. No right of action accrues under the policy until thirty days after such statement is furnished and thereafter action must be commenced within one year. The right to sue is predicated upon furnishing the statement and to commence the action within the time specified. There was no loss or damage until the plaintiff found it necessary to have the lines established. The letter of November 17, 1942, merely placed the company upon notice that the plaintiffs would take appropriate steps to do that which it was claimed the company was required to do. No loss or damage had been sustained and it was impossible for the plaintiffs to prove loss or the amount of damage at that time. Thereafter the plaintiffs proceeded in an effort to establish the lines. A surveyor was employed and after repeated efforts abandoned the assignment. Later the services of another surveyor were engaged. The record discloses that due to difficulties encountered months were consumed in investigating the location of the boundaries and in conducting the survey.

Judgment will be entered for the plaintiffs in the amount expended by them in having the boundary lines established.