Catherine J. KILLIAN and Richard E. Grossberg, individually and on behalf of all others similarly situated, Plaintiffs,

v.

A. Donald McCULLOCH, Jr., Reef C. Ivey III, Albert J. DiMarco and John E. Sylvester, Defendants.

Civ. A. No. 93–CV–3093.

United States District Court,
E.D. Pennsylvania.

April 18, 1994.

Patricia D. Gugin, Alan M. Sandals, Sherrie R. Savett, Berger & Montague, P.C., Philadelphia, PA, Robert A. Rovner, Rovner, Allen, Rovner, Zimmerman & Kats, Feasterville, PA, for plaintiffs.

Ellen Rosen Rogoff, Bolger, Picker, Hankin & Tannenbaum, Philadelphia, PA, for defendant McCulloch.

Barry E. Ungar, Carol J. Sulcoski, Mann, Ungar & Spector, Philadelphia, PA, for defendant Ivey.

Anthony C.H. Vale, Pepper, Hamilton & Scheetz, Philadelphia, PA, for DiMarco.

Thomas A. Masterson, Thomas P. Hogan, Jr., Morgan, Lewis & Bockius, Philadelphia, PA, for defendant Sylvester.

Margaret S. Woodruff, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for movant Nutri/System, Inc.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This matter involves a motion to dismiss filed by Defendants. On June 9, 1993, Plaintiffs filed a class action complaint against Defendants, Donald McCulloch, Reef Ivey, Albert DiMarco, and John Sylvester alleging violations of the Employee Retirement Income Security Act of 1974 (ERISA), *as amended*, 29 U.S.C. § 1001 *et seq.* (1991). Specifically, they alleged that Defendants' failure to pay certain amounts due to Plaintiffs under the Nutri/System, Inc., Partnership Profit Sharing Plan (the Plan) constituted a violation of their fiduciary duties under ERISA. On July 30, 1993, Defendants requested the Court to dismiss the complaint or to grant them summary judgment on the ground that the Court lacked subject matter jurisdiction because the Plan was not subject to ERISA, and therefore there was no federal question at issue. Moreover, Defendant Sylvester requested a stay of discovery as to him which this Court granted pursuant to an order dated October 12, 1993.

Plaintiffs filed a first amended class action complaint on August 27, 1993. The amended complaint reasserted the original claim that Defendants violated ERISA in their administration of the Plan (count 1). It also included seven additional state law claims (counts two through seven and nine), plus a new ERISA claim based on events unrelated to the Plan, *i.e.*, a claim pertaining to medical benefits (count 8). Plaintiffs also dropped two Pennsylvania residents named in the original complaint, presumably to ensure complete diversity of citizenship.

Defendants McCulloch, Ivey, and DiMarco seek to dismiss all but count two of Plaintiffs' amended complaint on the ground that Plaintiffs fail to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Alternatively, they request this Court to grant summary judgment against Plaintiffs on those counts pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant Sylvester has filed a separate motion also seeking dismissal or summary judgment on the amended complaint.

### I. *Standard*

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of the complaint. *See Kehr Packages, Inc. v. Fidelcor*, 926 F.2d 1406, 1408 (3rd Cir.1991), *cert. denied*, 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991). In considering a Rule

12(b)(6) motion to dismiss, the court "must accept as true all well-pleaded allegations of the complaints and construe them liberally in the light most favorable to the plaintiffs." *Labov v. Lalley*, 809 F.2d 220, 221 (3d Cir. 1987); *Institute of Pennsylvania Hospital v. The Travelers Insurance Co.*, 817 F.Supp. 24, 25 (E.D.Pa.1993).

Where a defendant introduces matters outside of the pleadings into a motion to dismiss, the motion is converted into a motion for summary judgment. *See* Fed. R.Civ.P. 12(b). A motion for summary judgment will be granted where the evidence establishes that no genuine issue of material fact exists in the dispute, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party has the initial burden of demonstrating that no material issue of fact exists; once proffered, the burden then shifts to the non-moving party to present evidence that there is a genuine issue for trial. *Id.*

## II. *Discussion*

### A. *Statement of Facts*

Defendants McCulloch, Ivey, DiMarco, and Sylvester, by virtue of their ownership of all of Nutri/System's stock, held positions as both members of Nutri/System's Board of Directors and as the Corporation's officers.

In the early months of 1989, however, Sylvester decided to retire from Nutri/System and sell his share of stock in Nutri/System (the Company). Sylvester and Nutri/System closed the sale of his stock on June 1, 1989, and by June 5, Sylvester actually ceased working for Nutri/System. Sylvester's retirement as a member of the Board of Directors and principal became official effective July 31, 1989.

In March, 1989, Nutri/System's Board of Directors adopted the Plan. The Plan was intended to be a bonus program, supplementing the income of important employees with a share of the Company's profits. The Plan had three official purposes: 1) "to link the financial interests ... of key employees with the long term performance and growth of Nutri/System;" 2) "to provide these individuals with an opportunity to share the wealth that they are helping to create;" and 3) to "encourage the retention of key employees." *See* Administrative Guidelines of the Plan, at 1. The Plan created the Compensation Committee of the Board of Directors which had full authority and control over the Plan's administration and its assets. Defendants McCulloch and Ivey were the sole members of the Compensation Committee.

The Plan operated on a fiscal year from August 1 through July 31. Following the close of each fiscal year, the Company allocated a percentage of its net profits to each Plan participant based on an annual assessment of shares.[1] The Company then announced the value of the shares for a given fiscal year in October following the close of that fiscal year. The participants became vested in their shares three and one-half years after the Company announced the share value, provided that the participant had remained continuously employed by the Company during that entire period. As originally designed, the Plan contemplated payment to each participant for their shares "within thirty (30) days of the end of each three and one-half (3½) year award." *Id.* at 2. Payment would be equal to the originally calculated share value, plus two and one-half years of compounded interest, minus any applicable government withholding and Social Security taxes.

In short, the Plan envisioned payments to participants after the participant completed the requisite three and one-half years of continuous employment after the Company announced the value of the shares. The Plan contemplated payment at that point irrespective of whether the participant remained in the Company's employ after completing the requisite time period.

---

1. The Company assigned shares each October for the current fiscal year according to the participant's grade level mid-point, grade factor and years of service. Each share was valued identically according to the following formula: predetermined percentage of annual profits divided by number of shares assigned to the Plan.

The Plan also provided that payment could be made to a participant upon termination of employment prior to completion of the requisite three and one-half years if: 1) a participant terminating due to total disability or death during the first year of any performance period would be eligible for a pro-rata portion of his or her share of the award; and 2) a participant terminating during the second or third year following the award of shares due to total disability, death, or retirement[2] would be paid the full value of his or her shares. No award would be earned or paid in the case of termination of a participant's employment for any other reason prior to completion of the requisite length of continuous service.

Nutri/System, however, could not fulfill the Plan's obligations. In March 1992, McCulloch announced that the Company had insufficient cash to make the 1992 Plan payments as scheduled. Similarly, in 1993 Nutri/System again lacked the funds to be able to meet the Plan's payment schedule. Plaintiffs allege that as of April 1, 1993, the amount of vested benefits owed to Plaintiffs totaled $12 million.

On May 4, 1993, a petition for involuntary bankruptcy under Chapter 7 of the Bankruptcy Code was filed against Nutri/System. On June 4, 1993, the petition was converted to a voluntary petition under Chapter 11.

### B. Count One—ERISA

■ Count one of the amended complaint alleges that Defendants violated ERISA by failing to fund the Plan and subsequently failing to pay benefits due to Plaintiffs under the Plan. However, we find that Nutri/System's Plan does not fall within ERISA's purview, and we must, therefore, dismiss count one.

By its terms, ERISA applies only to "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both." 29 U.S.C. § 1002(3). Thus, to establish statutory coverage, Plaintiffs allege that the Plan is an "employee pension benefit plan" as defined in ERISA.

An employee pension benefit plan is defined as any program or plan "to the extent that by its express terms or as a result of surrounding circumstances" it:

i) provides retirement income to employees, or

ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,

regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

29 U.S.C. § 1002(2)(A).

Plaintiffs argue that the Plan falls within this definition because the Plan resulted in a deferral of income to "periods extending to the termination of covered employment or beyond." However, as the case law and the applicable regulations demonstrate, Plaintiffs' argument is without merit.

In a case similar to this one, the court in *McKinsey v. Sentry Ins.*, 986 F.2d 401 (10th Cir.1993), held that the company's "Golden Career Bonus Plan" was not governed by ERISA. The express terms of the plan provided that it was:

a deferred compensation plan for Sales Representatives for the sole purpose of promoting in career sales representatives the strongest interest in the successful operation of the Company, loyalty to the organization and increased effectiveness of their work by providing a method for sharing in the growth of the Company based upon the amount of sales credits they produce in accordance with the terms of the Plan.

*Id.* at 406. Under the terms of the plan, an employee became eligible for bonus allocations after his or her first year anniversary with the company, and by the employee's seventh year, the bonus allocations would be 100 percent vested. Additionally, after five years, the employee could withdraw any portion of the vested allocation from her ac-

---

**2.** A person retiring would have to have been at least age 55 and have had at least five years of service with the Company to be entitled to re-

ceive payment under the Plan for a retirement in the second or third year.

count. The plan also provided that all allocations would fully vest upon an employee's death or retirement, but, in the event of termination, the employee's right to nonvested allocations was terminated.

The *McKinsey* court rejected plaintiff's argument that because a sales representative could defer payment of the bonus allocations until termination of employment to provide for retirement income, the bonus plan qualified as an employee pension benefit plan within the meaning of ERISA. *Id.* In so doing, the court relied on the applicable regulations promulgated by the Secretary of Labor which provide:

> For purposes of title I of the Act and this chapter, the terms "employee pension benefit plan" and "pension plan" shall not include payments made by an employer to some or all of its employees as bonuses for work performed, *unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees.*

*Id.* at 405 (quoting 29 C.F.R. § 2510.3–2(c) (emphasis added)). The court reasoned that because the plan did not systematically defer payments until retirement and the employee could withdraw allocations at any time during the course of employment, the plan was not an employee pension benefit plan. *Id.* at 406.

Likewise, in *Murphy v. Inexco Oil Co.,* 611 F.2d 570 (5th Cir.1980), the court similarly rejected plaintiffs' argument that the plan, which was designed to provide employees with a bonus based upon performance, constituted a pension plan because the employees could possibly receive the proceeds after retirement. The court stated "the mere fact that some payments under a plan may be made after an employee has retired or left the company does not result in ERISA coverage." *Id.* at 575. The court further stated that under the regulations, some bonus plans would be covered by ERISA, but only those plans which payments were systematically deferred to the termination of covered employment or beyond, or so as to provide retirement benefits. *Id.* In light of the fact that under this plan, the benefits accrued once production by an employee began so as to provide employees with current income, there was no coverage by ERISA even though the employees might be paid after they retired or had left the company.

Finally, in *Hagel v. United Land Co.,* 759 F.Supp. 1199 (E.D.Va.1991), the court also found the plan at issue was not covered by ERISA. The plan provided for bonuses based on an employee's performance to be paid over five years in five equal installments, which would commence the year that a certain real estate project (which had been developed by defendant company and the employee) closed. If however, the employee voluntarily resigned or was terminated, any installments that had not been paid out would be forfeited. Rejecting plaintiff's argument that the plan constituted an employee pension benefit plan, the court noted that the purpose of the plan was to provide the employee with income *during* his employment because plaintiff received the payments during his employment, and the fact that some portion of the income might become due after termination was not enough to bring the plan within the purview of ERISA.

Like the above cases, the Plan in this case neither provided retirement income nor systematically deferred compensation until termination of employment. As in *McKinsey,* the Plan's express purpose was to provide employees with an incentive to remain with the Company by rewarding them with extra compensation based upon the Company's profits and its performance. This is confirmed by a reading of the administrative guidelines which expressly state the Plan's purpose. Moreover, although payment of compensation relied upon a performance period of three and one-half years, the Plan was not designed to provide an employee with retirement benefits because the employee would receive the benefits regardless of whether or not he or she had retired. Thus, under the express provisions of the Plan, the employee would receive the benefits while he or she was still employed at Nutri/System, and the fact that benefits could be paid after termination due to retirement, death or disability was only incidental to the Plan. Clearly, as in *Murphy,* the fact that partic-

ipation may result in payment even after retirement does not mean the Plan constitutes an "employee pension benefit plan." As such, count one will be dismissed because the Plan does not fall within the purview of ERISA.

### C. Count VIII—Violation of ERISA in Connection with Medical Plan

Plaintiffs have also filed a second claim under ERISA alleging that defendants terminated the medical plan without prior notice in violation of the terms of the medical plan, and also failed to reimburse participants who incurred claims prior to termination but that were received by Defendants after the dates of termination. Plaintiffs also allege that Defendants did not notify them about the termination of the plan until nearly two weeks after they took action.

Defendants seek dismissal of this claim on the basis that no harm has been alleged by Plaintiffs. In the complaint, Plaintiffs state that coverage was terminated on April 28, 1993. However, Defendants assert that both Catherine Killian and Richard Grossberg could not have been harmed by the termination of coverage and the delay in notification because both employees had already terminated their employment prior to that date. Further, both Plaintiffs were no longer covered by the medical plan on April 28th because it only afforded coverage until the last day of the month in which employment was terminated. Grossberg left in March 1993, therefore his coverage ended on March 31, 1993. While Plaintiff Killian left her employment in April, 1993, she does not allege any damage in the complaint as a result of Defendants terminating the medical plan without first notifying her, or by delaying notification.

However, Defendants ignore the fact that the complaint clearly states that "[m]any of the members of the class, including plaintiff Grossberg herein, have unpaid and substantial medical bills which should have been paid pursuant to the Medical Plan and/or COBRA coverage." Amended complaint, § 103. As such, Defendants' first argument is completely without merit.

■ Defendants also assert that the claim should be dismissed because it fails to adequately specify which Defendants initiated the action complained of in the complaint. As a preliminary matter, we note that it is clear that an individual who is acting as a director or officer of a corporation cannot be held personally liable under ERISA, absent an allegation that the corporate veil should be pierced. *Solomon v. Klein*, 770 F.2d 352 (3rd Cir.1985); *IUE AFL–CIO Pension Fund v. Locke Machine Co.*, 726 F.Supp. 561 (D.N.J.1989); *Galgay v. Gangloff*, 677 F.Supp. 295, 298 (M.D.Pa.1987). In this case, Plaintiffs have alleged that the corporate veil should be pierced, and that liability should be imposed on the individual Defendants.

■ We must therefore address whether Plaintiffs' allegations are sufficient to state a claim for piercing the corporate veil before we determine whether Plaintiffs' claim is sufficient for pleading purposes.[3] In order to pierce the corporate veil in the Third Circuit, the following must be shown: gross undercapitalization, non-payment of dividends, failure to observe corporate formalities, siphoning of the corporate funds by the dominant shareholder, insolvency of the debtor corporation, absence of corporate records, non-functioning of other officers or directors, and that the corporation is merely a facade for the operations of the dominant shareholders. *American Bell, Inc. v. Federation of Telephone Workers*, 736 F.2d 879, 886 (3rd Cir.1984); *United States v. Pisani*, 646 F.2d 83, 88 (3rd Cir.1981). One need not allege all the above factors in order to prove his claim, nor is this

---

**3.** Although Defendants do not expressly address this issue in connection with Count VIII, they address it in connection with Plaintiffs' claim for breach of contract. However, while Defendants argue that Plaintiffs' claim is inadequate under Pennsylvania law (because the breach of contract claim deals with state law), for purposes of Count VIII, we must consider whether the alle-

gations are adequate under federal law as the underlying claim, ERISA, deals with federal law. *See e.g. United Elec. Workers v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1092 (1st Cir.1992) (in determining whether to pierce corporate veil under ERISA claims, courts must apply federal standards of corporate separateness).

list exclusive. *Galgay,* 677 F.Supp. at 299. Moreover, the corporate form will only be disregarded in specific, unusual circumstances where it is necessary to prevent illegality, injustice or fraud, or where recognition of the corporate entity would defeat public policy. *American Bell,* 736 F.2d at 886; *Pisani,* 646 F.2d at 88 n. 5.

In *Galgay,* the court held that plaintiffs' allegations survived a motion to dismiss where they alleged that defendants (various enterprises) all conducted the same or similar business, shared assets and employees with one another, operated out of the same office and were each controlled by one person. The court stated that while plaintiffs' allegations were limited in both number and scope, it could not find that plaintiffs had stated no set of facts which would entitle them to relief. *Galgay,* 677 F.Supp. at 300. The court also noted that defendants were free to challenge the applicability of this ruling later on once a proper factual foundation had been established. *Id.* On the other hand, in *United States v. Atlas Minerals and Chemicals, Inc.,* No. Civ.A. No. 91–5118, 1993 WL 518421 (E.D.Pa. Dec. 7, 1993), the court held that no such claim was adequately pled where all that was alleged was that "Kleinert's, Inc. and/or its predecessors-in-interest arranged for disposal, or arranged for a transporter for transport for disposal, at the site. . . . Kleinert's, Inc. has assumed the liabilities of Brierwood Shoe. . . . Kleinert's, Inc. is responsible for the conduct and liabilities of Kleinert's, Inc., Brierwood Shoe." *Id.* at 5. The court noted that there were no allegations of control, fraud or of a sham corporation to put Kleinert's on notice of plaintiffs' theory.

■ In the present case, plaintiffs allege the following:

> Defendants, as the sole owners and high ranking officers of Nutri/System, conducted the affairs of Nutri/System in disregard for the corporate form. Plaintiffs are entitled to pierce the corporate veil, since there was insufficient corporate capitalization, personal use of corporate assets, and control by defendants only as dominant shareholders. Moreover, defendants were personally and unjustly enriched by plaintiffs' and the class' efforts. Defendants were paid exorbitant salaries and enjoyed other benefits, due in large part to the efforts of plaintiffs and the class, and at absolutely no risk to defendants. Defendants initially purchased Nutri/System in a 1986 leveraged buyout with little or none of their own capital assets. Defendants, in fact, have invested little or none of their own capital or assets in the company. While little or nothing of their own was put at risk, defendants placed employees' livelihoods at risk by their conduct which has resulted in serious financial harm for plaintiffs and the class.

Amended complaint, §§ 95, 96.

While the allegations of piercing the corporate veil are rather brief in this case, we cannot say that the claim fails to give Defendants notice of Plaintiffs' claim. *See Usery v. Chef Italia,* 540 F.Supp. 587, 591 n. 11 (E.D.Pa.1982) (stating that the purpose of a pleading is to inform a party of the nature of the claims being asserted against him or her, and the relief sought, and that technicalities are no longer as important as they once were under the rules). In the above claim, Plaintiffs allege several factors which are necessary in order to state a claim for piercing the corporate veil—that Defendants used the corporation's assets for their own personal use, that the corporation was undercapitalized, that the corporation was controlled by dominant shareholders, and that an injustice in the form of unjust enrichment occurred. Further, Plaintiffs incorporated paragraphs 1–33 of the complaint in Count VIII, where they also allege that Nutri/System filed for bankruptcy. Amended complaint, § 32. Construing all of the allegations together, Plaintiffs have also alleged that the debtor corporation was insolvent. Therefore, assuming Plaintiffs' allegations to be true, we cannot say that Plaintiffs have failed to allege any facts that would entitle them to pierce the corporate veil. As such, Count VIII is sufficient because it states an adequate claim against Defendants.

■ Finally, we address Defendants' objection that the complaint fails to specify which of the Defendants initiated the actions complained of; rather, the complaint only

identifies "the defendants." Nonetheless, the parties are only at the pleading stage, and it is possible that Plaintiffs may not know which Defendant actually took the above actions until discovery is conducted. *See Petro–Tech, Inc. v. Western Co. of North America,* 824 F.2d 1349, 1362 (3rd Cir.1987); *In Re Meridian,* 772 F.Supp. 223, 230 (E.D.Pa.1991) (holding plaintiffs need not identify specific acts of each individual defendant at this point of litigation). Thus, since Count VIII is sufficient in all other respects, we do not think it is necessary to dismiss Count VIII under these circumstances. Moreover, we note that Defendants still have adequate notice of Plaintiffs' claims, and they can simply deny the allegations if they do not pertain to certain individuals. As such, Defendants' objection is without merit.

### D. Count Three: Breach of Contract

In count three, Plaintiffs assert a claim for breach of contract. An individual officer, however, is generally not liable for the breach of a contract by a corporation. *Pell v. Weinstein,* 759 F.Supp. 1107, 1115 (M.D.Pa.1991), *aff'd,* 961 F.2d 1568 (3rd Cir. 1992). Where a party contracts with a corporation through an agent who acts within the scope of his authority and reveals his principal, the corporate principal is alone liable for the breach of contract. *Id. quoting Daniel Adams Associates v. Rimbach Publishing, Inc.,* 360 Pa.Super. 72, 79–80, 519 A.2d 997, 1000–01 (1987), *allocatur denied,* 517 Pa. 597, 535 A.2d 1056 (1987).

Pennsylvania courts have discarded the corporate form when it was necessary to avoid an injustice. *Wheeling–Pittsburgh Steel Corp. v. Intersteel, Inc.,* 758 F.Supp. 1054, 1059 (W.D.Pa.1990). However, piercing the corporate veil is the exception, and courts should start from the general rule that the corporate entity should be upheld unless specific, unusual circumstances call for an exception. *First Realvest, Inc. v. Avery Builders, Inc.,* 410 Pa.Super. 572, 600 A.2d 601, 604 (1991).

Defendants now seek to dismiss count three on the ground that Plaintiffs have pled insufficient facts to pierce to corporate veil. While we previously addressed this argument

in conjunction with Count VIII of the complaint and found it to be sufficient under federal law, we note that we must look to Pennsylvania law to determine if Plaintiffs' allegations are sufficient to state a claim in Count III as the underlying claim (breach of contract) deals with Pennsylvania law. *See Kleinknecht v. Gettysburg College,* 989 F.2d 1360, 1365 (3rd Cir.1993).

In order to pierce the corporate veil in Pennsylvania, courts look at several different factors:

1) whether or not corporate formalities were observed and corporate records were kept; 2) whether other corporate officers and directors existed other than the shareholder; and 3) whether the dominant shareholder has used the assets of the corporation for his own personal use. *Lynch v. Janson,* Civ.A. No. 90–5063, 1990 WL 188926, at 7 (E.D.Pa. Nov. 28, 1990); *Village at Camelback Prop. Owners Ass'n, Inc. v. Carr,* 371 Pa.Super. 452, 461, 538 A.2d 528, 533 (1988), *allocatur granted,* 519 Pa. 668, 548 A.2d 257 (1988). Further, the corporate veil will be pierced only where it is alleged that the corporation was being used to perpetrate a fraud or a crime, or where it is necessary to avoid injustice. *Carr,* 371 Pa.Super. at 462, 538 A.2d at 533 (citing *Rinck v. Rinck,* 363 Pa.Super. 593, 597, 526 A.2d 1221, 1223 (1987)).

In *Carr,* the court held that the complaint, when read as a whole, stated sufficient allegations to pierce the corporate veil. In *Carr,* the plaintiff alleged that:

a) the corporations were insufficiently capitalized at the outset; b) there was an intermingling of funds between and among the corporations as well as with personal assets of Defendant Carr; c) other officers and directors, if any, of the corporations were not functioning; d) the corporations failed to observe corporate formalities; e) the corporations did not pay dividends in the regular and ordinary course of their business; and f) in conducting the business affairs of the corporations Defendant Carr consistently held himself out as individually conducting such affairs without use of the corporate names and without identify-

ing that his actions were taken as an officer or employee of the corporation.

*Id.* at 535.

On the other hand, in *First Realvest, Inc. v. Avery Builders, Inc.*, 410 Pa.Super. 572, 600 A.2d 601 (1991), the court held that plaintiffs had not pleaded sufficient facts to support piercing the corporate veil. There, the court considered the following complaint and found it to fall short of the extreme remedy of piercing the corporate veil:

> 41. Defendants, ... formed Avery Builders, Inc. for their own benefit in that corporate funds are intermingled with their own or other alleged corporations owned by them and that they divert corporate funds to their own use and treat the corporation as an individual proprietorship and as an "alter ego."

*Id.* at 603 n. 2. The court reasoned that all corporations are formed for the benefit of their shareholders. *Id.* Further, it found that to say that the corporate form should be abandoned because a shareholder drew out funds would render the corporate form useless. *Id.*

Unlike *First Realvest*, Plaintiffs here have pled sufficient facts to pierce the corporate veil. As we found with regard to count eight, Plaintiffs have alleged that the company was undercapitalized, that Defendants used the corporate assets for their own personal use and that there was control by Defendants of the company only as dominant shareholders. Further, Plaintiffs have alleged that there has been an injustice in this case. Thus, Plaintiffs have stated more than what was alleged in *First Realvest*, where the only allegations pertaining to piercing the corporate veil were that the funds were withdrawn for the defendants' own personal use. On the other hand, Plaintiffs' complaint is more similar to the complaint in *Carr*, although the allegations are not as extensive, Plaintiffs have alleged facts which, if true, are sufficient under Pennsylvania law to state a claim for piercing the corporate veil,[4] and as such, count three will not be dismissed.

### E. Count Four: Breach of an Implied Contract

■ Defendants argue that count four of the complaint should be dismissed because Plaintiffs have already brought a claim for breach of contract, and that Plaintiffs' claim for breach of the implied covenant of good faith is simply another way of trying to enforce the alleged express obligations under the Plan.[5] Defendants cite *USX Corp. v. Prime Leasing, Inc.*, 988 F.2d 433 (3rd Cir. 1993) as support for the proposition that courts will not imply terms of a contract where express terms exist in the written agreement.

Pennsylvania courts have adopted section 205 of the Restatement of Contracts (Second), which states that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Seal v. Riverside Fed. Sav. Bank*, 825 F.Supp. 686, 698 (E.D.Pa.1993) (citing *Somers v. Somers*, 418 Pa.Super. 131, 613 A.2d 1211, 1212 (1992)). The purpose of this good faith obligation is to allow enforcement of the contract terms in a manner that is consistent with the parties' reasonable expectations. *Seal*, 825 F.Supp. at 699 (quoting *Coxfam, Inc. v. AAMCO Transmissions, Inc.*, No. Civ.A. 88–6105, 1990 WL 131064, at 5 (E.D.Pa.1990)). Further, under the doctrine of necessary implication:

> in the absence of an express provision, the law will imply an agreement by the parties

---

4. We also reject Defendants' argument that the claim should be dismissed because it does not specify which Defendant engaged in the above acts. As we previously stated, the complaint simply refers to all Defendants. While complaints should be plead with sufficient specificity, we do not find this to be such an egregious error to warrant dismissing the complaint. Defendants have adequate notice of the claims, and as such, will be able to answer the complaint based on the above allegations. *See Petro–Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349, 1362 (3rd Cir.1987); *In Re Meridian*, 772

F.Supp. 223, 230 (E.D.Pa.1991) (holding plaintiffs need not identify specific acts of each individual defendant at this point of litigation).

5. Defendants also argue that the claim should be dismissed because as a contract claim, there can be no cause of action since the corporate veil cannot be pierced. However, given that we have held Plaintiffs' claim is sufficient to state a claim for piercing the corporate veil, we reject this argument.

to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract. *Somers*, 418 Pa.Super. 131, 613 A.2d 1211, 1214 (quoting *Frickert v. Deiter Bros. Fuel Co.*, 464 Pa. 596, 347 A.2d 701, 705 (1975) (Pomeroy, J., concurring)). Courts need not find an ambiguity in the contract before this doctrine can apply. *Slater v. Pearle Vision Center, Inc.*, 376 Pa.Super. 580, 546 A.2d 676, 679 (1988).

While Defendants are correct that courts will not imply a covenant where it is covered by the express terms of the agreement, that rule has no application in the case at bar. Plaintiffs' breach of contract claim is predicated on Defendants' failure to pay benefits due under the Plan. Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is predicated on Defendants' failure to ensure funding for the required payments under the Plan. While at first glance the two causes of action may appear to be the same, in reality they are not. Defendants had a written obligation to pay benefits when they became due, however, the duty to ensure adequate funding for the Plan arises because Defendants were obligated by contract to pay the benefits. Although it is not expressly stated in the Plan, such a duty would be implied by the doctrine of necessary implication because it was the parties' intent for certain employees to receive bonuses after a three and a half year period. Therefore, a difference exists between obtaining adequate funding to pay out benefits, and actually paying the benefits when they became due.

In sum, the obligation to ensure funding is not expressly covered by the terms of the Plan, and this Court finds that such an obligation can be implied under the doctrine of necessary implication and section 205 of the Restatement (Second) of Contracts. Defendants have provided us with no other reason why Plaintiffs cannot state a claim for both breach of contract and breach of an implied covenant. Moreover, to assert that Plaintiffs cannot bring a claim for breach of the implied covenant because they have already stated a claim for breach of contract is ludicrous. There is nothing preventing Plaintiffs from stating two separate claims for breach of contract in the complaint; likewise, Plaintiffs are not prevented from stating a claim for breach of contract along with a claim for breach of the implied covenant of good faith and fair dealing. *See e.g. AAMCO Transmissions, Inc. v. Harris*, 759 F.Supp. 1141 (E.D.Pa.1991) (defendant brought counterclaim for breach of contract predicated on franchise agreement between the parties, as well as counterclaim for breach of implied covenant of good faith and fair dealing based upon obligations stemming from franchise agreement). Therefore, Plaintiffs have adequately stated a claim for breach of the implied covenant of good faith and fair dealing.

### F. Count Five: Tortious Interference

Plaintiffs have asserted a claim for tortious interference with contract in count five of the amended complaint. Defendants now argue that the claim should be dismissed because they were acting in their official capacities, and therefore, cannot be held liable under this theory.

In order to state a claim for tortious interference, Plaintiffs must allege the following elements: 1) the existence of a contract; 2) that defendants had the purpose or an intent to harm Plaintiffs by interfering with the contract; 3) absence of justification or privilege for the interference; and 4) damages. *Neish v. Beaver Newspapers, Inc.*, 398 Pa.Super. 588, 581 A.2d 619, 625 (1990), *allocatur denied*, 527 Pa. 648, 593 A.2d 421 (1991) (citations omitted); *see also Zack v. NCR Corp.*, 738 F.Supp. 933, 935 (E.D.Pa. 1990) (citations omitted). Essential to the right of recovery under the theory of tortious interference is the existence of a contractual relationship between Plaintiffs and a party other than Defendants. *Nix v. Temple University*, 408 Pa.Super. 369, 596 A.2d 1132, 1137 (Pa.Super.1991). Case law clearly holds that a corporation cannot tortiously interfere with a contract to which it is a party. *Id.* Since a corporation acts through it agents

and officers, such agents and officers cannot be considered third parties when they are acting in their official capacities. *Id.; see also Avins v. Moll,* 610 F.Supp. 308, 318 (E.D.Pa.1984), *aff'd,* 774 F.2d 1150 (3rd Cir. 1985) (holding that the overwhelming weight of authority is that a corporate officer is not personally liable for tortious interference). The only exception arises if the officer's *sole* motive in causing the corporation to breach the contract is actual malice toward the plaintiff, or if the officer's conduct is against the corporation's interest. *Avins,* 610 F.Supp. at 318.

 In the present case, Plaintiffs have alleged "[i]n the event that one or more defendants is found not to have been a party to the agreement as alleged in Counts THREE or FOUR, then that defendant's (or defendants') conduct as alleged therein constitutes tortious interference with said agreement." Amended complaint, para. 74. As previously stated, counts three and four assert a claim for piercing the corporate veil. Since we have found that claim to be adequate, Defendants' first argument fails because they could be considered to be third parties if the corporate veil were pierced.

However, Plaintiffs still have not stated a claim for tortious interference. Nowhere in the complaint is there an allegation of intent or purpose to harm Plaintiffs by Defendants. While Plaintiffs state that intent has been pled and they then attempt to direct the Court to the pertinent portions of the complaint, the only paragraph which purports to allege any type of intent is contained in paragraph 70, which states that Defendants divested and misappropriated company assets which should have been reserved to pay the benefits due under the Plan. Further:

> [i]nstead of acting in the interest of the participants and pursuant to their agreement with them, defendants acted solely to advance their own selfish interests. They acted for the exclusive purpose of enriching themselves at the expense of the par-

ticipants whose dedication and labor created the success of the company.

Amended complaint, para. 70.

Even with a liberal reading of the complaint, Plaintiffs have not alleged any intent or purpose to harm on the part of Defendants. While Defendants' conduct may have caused interference with the contract, at the expense of Plaintiffs, that alone does not mean Defendants had any intent or purpose to harm Plaintiffs. As such, count five of Plaintiffs' complaint is dismissed.

### G. Count Six: Fraudulent Misrepresentation

Defendants seek to have count six of the complaint dismissed on the basis that Plaintiffs have failed to state a claim for fraud. In support of this claim, Defendants state that Plaintiffs' claim of fraud is not pled with adequate specificity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Defendants also argue that Plaintiffs' allegations of damages are not recoverable under Pennsylvania law, and as such, their claim for fraud is deficient. However, for the reasons set forth below, we find that Plaintiffs' fraud claim is sufficient.

 To state a cause of action for fraud or fraudulent misrepresentation under Pennsylvania law, Plaintiffs must plead damages to the recipient as the proximate result of the misrepresentation. *Constitution Bank v. DiMarco,* 155 B.R. 913, 918 (E.D.Pa.1993).[6] Further,

> under Pennsylvania law, in an action based on fraud, the measure of damages is "actual loss," *Kaufman v. Mellon National Bank & Trust Co.,* 366 F.2d 326 (3rd Cir. 1966), and not the benefit, or value, of that bargain. *Savitz v. Weinstein,* 395 Pa. 173, 178, 149 A.2d 110, 113 (1959). The victim is entitled to all pecuniary losses which result as a consequence of his reliance on the truth of the representation.

---

**6.** Other elements of a properly pleaded claim for fraudulent misrepresentation include: 1) a misrepresentation; 2) a fraudulent utterance thereof; 3) intention by the maker that the recipient will thereby be induced to act; and 4) justifiable reliance by the recipient upon the misrepresentation. *DiMarco,* 155 B.R. at 918; *Sevin v. Kelshaw,* 417 Pa.Super. 1, 611 A.2d 1232, 1236 (1992).

*Delahanty v. First Pennsylvania Bank, N.A.,* 318 Pa.Super. 90, 117, 464 A.2d 1243, 1257 (1983).

■ Here, Plaintiffs allege that their reliance on Defendants' misrepresentations induced them to remain employees of Nutri/System and to provide and continue to provide labor and services to it. They further allege that as a result, they "suffered substantial monetary loss and damage, as well as loss of alternative income-producing opportunities" plus the costs of legal fees in order to recoup the amounts owed by Defendants. Amended complaint, paras. 83–84. Defendants argue that such damages are not recoverable under Pennsylvania law because 1) recovery of money due under the Plan amounts to the benefit of the bargain, and 2) the mere forbearance of seeking alternative employment opportunities is legally insufficient to state a claim for damages.

We disagree with Defendants' first argument that Plaintiffs' allegations for money due under the Plan are not recoverable because they merely constitute the benefit of the bargain. While we can find no case on point, it is apparent that Plaintiffs are seeking more than merely the benefit of the bargain, rather, they are seeking actual damages in this case. Actual damages are those that will put the injured party in a position that he was in before he was injured. 25 C.J.S. Damages § 2 (1966). Similarly, they must be capable of measurement, and cannot be speculative or based on conjecture. *Delahanty,* 318 Pa.Super. 90, 464 A.2d 1243, 1261.

In this case, Plaintiffs allege that because of the representations of Defendants about the Plan, they were induced to work harder and to stay employed at Nutri/System. While it may be difficult, Plaintiffs' damages are capable of measurement. If Plaintiffs can show the amount of hours worked or profits generated prior to introduction of the Plan, and compare them to hours worked or profits generated after introduction of the Plan, then their extra efforts are capable of measurement. Further, if Plaintiffs' allegations are true, then it is possible that many employees remained at Nutri/System longer than they would have in the hopes of obtaining the benefits after a three and a half year period, and that they worked harder in order to obtain more benefits. Under this scenario, Defendants should not be entitled to the extra work effort without compensating Plaintiffs for the extra work generated. *See e.g. Lokay v. Lehigh Valley Cooperative Farmers, Inc.,* 342 Pa.Super. 89, 492 A.2d 405, 410 (1985) (employee entitled to future lost income and fringe benefits he would have received from former job when fraudulently induced to quit and join present employer because such damages constituted actual loss). As such, Defendants' first argument fails.

■ However, Defendants' second argument does have merit.[7] Plaintiffs only allege that they have suffered the loss of alternative income-producing opportunities. They do not clearly state that they have been offered employment opportunities that have been turned down. Rather, the allegations appear to state that they merely forbeared from finding alternative employment opportunities. Given the fact that there must be actual damages, and the fact that allegations of fraud must be specific, Plaintiffs' claim is not sufficient to state a claim for damages under Pennsylvania law. *See e.g. Surovcik v. D & K Optical, Inc.,* 702 F.Supp. 1171, 1178 (M.D.Pa.1988) (mere allegation that party did not seek employment instead of allegation that he turned down job offers, was not enough to constitute harm for a fraudulent misrepresentation claim).

■ Next, Defendants allege that the claim is not pled with adequate specificity to state a claim for fraud. Claims for fraud must be pleaded with adequate particularity in order to satisfy Rule 9(b) of the Federal Rules of Civil Procedure. *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3rd Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). However, the Third Circuit has noted that "in applying Rule 9(b), 'focusing exclusively on its "particularity language" is too narrow an approach and fails to take account

---

7. While this holding does not change the fact that Plaintiffs have adequately stated a claim for fraud, Defendants' argument should nonetheless be addressed.

of the general simplicity and flexibility contemplated by the rules.'" *Id.* (citations omitted). The rule's purpose is to give notice to the defendant of the precise misconduct with which she is charged, and to protect her from any spurious charges of fraudulent or immoral behavior. *In Re Meridian Securities Litigation,* 772 F.Supp. 223, 229 (E.D.Pa.1991). As long as there is some precision and some measure of substantiation in the pleadings, the rule will be satisfied. *Id.*

■ In this case, Plaintiffs have adequately pled a claim of fraud. Plaintiffs allege that the misrepresentations were made by Defendants, and incorporated into the written materials regarding the Plan which were authored by Defendants. Plaintiffs also allege that oral representations were also made at various times by Defendants, one of which was made by defendant Ivey at the Nutri/System National Management Meeting in Hawaii in August 1989. Plaintiffs then list eight representations allegedly made by Defendants. Additionally, they allege that Defendants concealed three facts from Plaintiffs.

Under the rules, then, the complaint is adequate. There are eleven specific misrepresentations and omissions allegedly made by Defendants. It is clear that Plaintiffs are relying in part on representations contained in the documents concerning the Plan. Further, Plaintiffs also allege that in one instance, defendant Ivey made certain representations at a meeting in Hawaii. Thus, we find these allegations are sufficient to give Defendants notice of the claim. Moreover, the fact that Plaintiffs do not indicate which Defendant made each representation is not fatal to their claim. As we have previously indicated, it would be impossible for Plaintiffs to delineate which Defendant was responsible for which act prior to discovery. *See Petro–Tech, Inc. v. Western Co. of North America,* 824 F.2d 1349, 1362 (3rd Cir.1987); *In Re Meridian,* 772 F.Supp. 223, 230 (E.D.Pa.1991) (holding plaintiffs need not identify specific acts of each individual defendant at this point of litigation).

## H. Negligent Misrepresentation

Defendants next argue that Plaintiffs' claim for negligent misrepresentation should be dismissed because, like the fraud claim, the claim fails to state a claim for damages. Defendants also argue that a claim for negligent misrepresentation cannot be predicated on a promise of future performance and finally, that Plaintiffs have failed to allege any privity in the complaint. We reject Defendants' arguments, however.

Pennsylvania has adopted the definition of negligent misrepresentation contained in the Restatement of Torts (Second) which states:

1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

2) ... [T]he liability ... is limited to loss suffered a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Restatement (Second) of Torts § 552 (1977) (quoted in *Eisenberg v. Gagnon,* 766 F.2d 770, 778 (3rd Cir.1984), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985)).

Plaintiffs' claim for negligent misrepresentation is based on the same allegations as the claim for fraudulent misrepresentation. Obviously, because Plaintiffs have adequately stated a claim for damages in the claim for fraudulent misrepresentation, Defendants' first argument fails.

■ Nor does Plaintiffs' claim for negligent misrepresentation fail because it is predicated on future promises. Defendants claim that the claim fails "because one cannot negligently misrepresent his intention to car-

ry out a promise in the future." However, case law clearly holds that a cause of action for fraud can be predicated on future promises if the defendant knew at the time he made the promise that he would not carry it out. *American Trade Partners v. A–1 Int'l Importing Enter., Ltd.*, 755 F.Supp. 1292, 1307 (E.D.Pa.1990); *Redick v. Kraft, Inc.*, 745 F.Supp. 296, 301 n. 2 (E.D.Pa.1990). Likewise, if Defendants made statements about future occurrences with regard to the Plan, which Defendants should have known were untrue or unlikely to occur, and they failed to exercise reasonable care in communicating this information, then negligent misrepresentation has occurred. Defendants present us with no authority that a claim for negligent misrepresentation cannot be made under these circumstances, and as such, we reject this argument.

■ Finally, courts have held that there is no strict privity requirement under the definition of negligent misrepresentation as stated in the Restatement of Torts, as long as the action is brought by a person or persons as defined in subsection 2(a). *Eisenberg v. Gagnon*, 766 F.2d at 779–80; *see also In Re Chambers Dev. Securities Litigation*, 848 F.Supp. 602, 625, (1994) (relying on *Eisenberg* ). Here, Defendants allegedly made these representations to employees/participants of the Plan. This is a limited group of persons for whose guidance the information was supplied (as defined in subsection 2(a)). As such, Defendants' third argument fails.

### I. Count Nine: Pennsylvania Wage Payment and Collection Law

Defendants assert that because neither of the named Plaintiffs alleged what additional amounts are owed to them under Pennsylvania's Wage Payment and Collection Law, 43 Pa.Stat.Ann. §§ 260.1 to 260.11 (WPCL), count nine should be dismissed for failing to state a claim. Alternatively, Defendants argue that count nine should be pleaded with more specificity pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.

■ The purpose of the WPCL is to allow employees to recover wages and other benefits that are due from employers pursuant to agreements between the parties. *Tener v. Hoag*, 697 F.Supp. 196, 197 (W.D.Pa. 1988). In count two of the amended complaint, Plaintiffs state in detail the amounts owed to named Plaintiffs under the Plan, and allege that the failure to pay such amounts constitutes a violation of the WPCL. Count two also contains an allegation regarding the other members of the class for payments owed under the Plan along with a claim for interest and liquidated damages.

■ In count nine, Plaintiffs simply allege that "[m]any members of the class are due additional amounts from Nutri/System and defendants for unreimbursed business-related expenses, salary, and other benefits and the failure to pay such amounts constitutes additional violations of the [WPCL]." Amended complaint, para. 106. Complaints involving class actions require no more specificity than other pleadings under Rule 8 of the Federal Rules of Civil Procedure. 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1231, at 248 (2nd ed. 1990). However, we find the allegations in count nine are insufficient for Defendants to form a response. The complaint does not give Defendants any notice as to whom wages are owed, for what period of time, or what constitutes "other benefits" and to whom these additional benefits are owed. While we do not think Plaintiffs need to list the amounts owed for each member of the class, the complaint needs to be specific enough so that Defendants can formulate a defense. As such, we will grant Plaintiffs leave to replead count nine with more specificity.

### J. Defendant Sylvester.

Finally, we address Sylvester's individual motion for summary judgment on the remaining counts, two and nine.[8] Plaintiffs argue that the motion should be denied since they have not been allowed an adequate op-

---

8. Sylvester originally moved for dismissal or for summary judgment. However, because Sylvester has offered evidence beyond affidavits, we considered his motion as one for summary judgment. *See* Fed.R.Civ.P., Rule 12(b).

portunity for discovery. For reasons that follow, we agree.

 The Supreme Court cautioned that when the non-moving party has not had the opportunity to discover evidence essential to his opposition, the court should deny premature motions for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 6, 106 S.Ct. 2505, 2511 n. 6, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate only if the plaintiff has had "full opportunity to conduct discovery." *Id.; see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

 In *Miller v. Beneficial Management Corp.*, 977 F.2d 834, 845 (3rd Cir.1992), the Third Circuit considered whether the district court's grant of summary judgment was premature. There, the magistrate judge had stayed discovery as to defendants. As a result, the Third Circuit found that when the district court granted summary judgment, none of the key participants to the dispute had been deposed by the non-moving party. *Id.* The court held that an incomplete state of discovery alone warrants preclusion of summary judgment on the merits. *Id.; see also Temple University v. Salla Bros., Inc.*, 656 F.Supp. 97, 110 (E.D.Pa.1986).

Sylvester asserts that he could not be considered an "employer" for purposes of WPCL because he retired before any of the alleged wrongdoing took place.[9] The question is factual in nature and Sylvester duly submitted evidence beyond affidavits to support his assertion. Plaintiffs, however, have not been given the same opportunity. Indeed, on October 14, 1993, we entered a protective order in favor of Sylvester prohibiting all discovery directed towards him until the present motion was decided.

We are not persuaded that the dispute concerning Sylvester uniquely must ultimately go to trial. Nevertheless, without the discovery that Plaintiffs declare is necessary, we believe that summary judgment is premature at this stage of the proceeding. Our decision here does not preclude Sylvester

from resubmitting a second motion for summary judgment. However, for now we deny Sylvester's motion for summary judgment and revoke this Court's protective order entered October 14, 1993 staying discovery as to Sylvester.

### III. *Conclusion*

In sum, we hold that count one of the amended complaint is dismissed because the Plan does not constitute an employee pension benefit plan under ERISA. Count five is also dismissed because Plaintiffs have failed to allege all of the elements necessary to state a claim for tortious interference with contract. We also grant Plaintiffs leave to replead count nine (violations of WPCL) with more specificity. Finally, for the reasons stated above, all of Defendants' remaining arguments are denied. An appropriate order follows.

### *ORDER*

AND NOW, this 18th day of April, 1994, upon consideration of the motions of all Defendants to Dismiss or for Summary Judgment and all responses thereto, it is hereby ORDERED that:

1. Defendants' motions are GRANTED IN PART and count one (ERISA) and count five (tortious interference) of the Amended Complaint are DISMISSED with prejudice;

2. Plaintiffs are GRANTED leave to replead count nine (violation of Pennsylvania Wage Payment and Collection Law) with more specificity pursuant to Rule 12(e) of the Federal Rules of Civil Procedure within twenty (20) days from the entry date of this Order;

3. Defendants' motions are DENIED IN PART with respect to all other counts of the Amended Complaint; and

4. This Court's Order entered October 14, 1993 staying discovery as to Defendant Sylvester is VACATED.

---

**9.** Sylvester has also argued that he cannot be liable with respect to other counts of the complaint because he retired before any decisions were made with regard to funding or the failure to make payments under the Plan. Thus, our holding applies to these arguments as well.